UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                    Chapter 11

CHU H. KWON, et al.[1],                                    Case No.  1:19-44290 (ESS)
                                                          Jointly Administered

                        Debtor.      Hon. Elizabeth S. Stong

------------------------------------------------------------X

# DISCLOSURE STATEMENT TO SECURED CREDITOR 5TH AVENUE MIXED USE LLC'S PLAN OF REORGANIZATION FOR 4811 ASSOCIATES LLC.

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

**JASPAN SCHLESINGER LLP**
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000
Frank C. Dell'Amore, Esq.
Christopher D. Palmieri, Esq.

*Attorneys for 5th Avenue Mixed Use LLC*

Dated:   Garden City, New York
         January 14, 2020

---

[1] A list of the Debtors in these chapter 11 cases, along with the case numbers and last four digits of each Debtor's federal tax identification number, is listed on the Appendix attached hereto.

Secured creditor 5th Avenue Mixed Use LLC (the "Secured Creditor" or "Plan Proponent") has filed its *Plan of Reorganization for 4811 Associates LLC* (the "Plan"), with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This *Disclosure Statement for Secured Creditors Plan of Reorganization for 4811 Associates LLC* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of 4811 Associates LLC (the "Debtor") pursuant to § 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Secured Creditor believes that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

SUMMARY OF THE PLAN

The Plan provides for the Plan Proponent, or its designated nominee, to purchase the real property and improvements thereon located at 4811 5th Avenue, Brooklyn, New York 11220 (Block 775; Lot 4)[2] (the "Property") from the Debtor in accordance with the provisions of the Bankruptcy Code, pursuant to a private sale (the "Sale") pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004(f), with a closing of such Sale immediately following Confirmation of the Plan.[3]

Proceeds generated from the Sale will be utilized by the Plan Proponent to fund distributions under the Plan to satisfy all Allowed Claims of creditors of the Debtor in full, with payments to unsecured creditors receiving post-petition interest 4.00% per annum from the Petition Date and Secured Creditors receiving interest as guided by agreement or by statute. The Plan Proponent, or its designated nominee, has agreed to purchase the Property at the Sale by (i) satisfying and/or credit bidding the amount of its Secured Claim[4]; and (ii) providing an additional cash contribution (the "Cash Contribution") in an amount of $74,144.12 simultaneously with the closing of the Sale. The Cash Contribution shall be utilized to pay all Allowed Claims, including Administrative Claims and Professional Fees, in full.

---

[2] Upon information and belief, the Property consists of a four story walk up mixed use building.

[3] As set forth in more detail below, this proceeding has been consolidated for procedural purposes with three other Chapter 11 proceedings. The Plan Proponent is filing substantially identical disclosure statements and Chapter 11 Plans in two of those Chapter 11 proceedings (which involve two separate parcels of real property) which are also being sold pursuant to their respective Plans.

[4] The Sale of the Property, together with the sale of the respective properties in In re: 5505 Associates LLC, Case No.: 19-44264 (ESS) and In re: 5507 Associates LLC, Case No.: 19-44265 (ESS), will be in full satisfaction of the Secured Claim in each proceeding, which is based upon a Mortgage encumbering all three properties, as discussed below.

Through the Sale, the Plan Proponent, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances on confirmation, except that its election ownership shall be subject to the Mortgage.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Plan Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Plan Proponent based on its own research, documents provided by counsel to the New York State Department of Finance, the Court's Claims Register and certain other documents of public record. Although the Plan Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims |
|-------|----------------|----------------------------|------------------------------------|
| N/A | Bankruptcy Fees | NA | $34,650.00 |
| 1 | Priority Tax Claims | N/A | $0.00[6] |
| 2 | Secured Creditor's Secured Claim | Impaired | $6,904,196.96[7] |
| 3 | NY Claims | Unimpaired | $29,630.33[8] |
| 4 | General Unsecured Claims | Unimpaired | $3,292.93[9] |
| 5 | Equity Interests | Impaired | $0.00 |

In furtherance of the Plan, the Secured Creditor has agreed to provide Cash necessary to fund distributions under the Plan as follows: (1) payment to governmental units in the full amount of their Allowed Secured Claims for real estate taxes and water and sewer use charges; (2) payment in full to amounts due to and claims of (a) the Office of the United States Trustee (b) Holders of Priority Tax Claims (c) Holders of Priority Claims (d) Allowed Administrative Creditors; and (e) Holders of Unsecured Claims.

---

[5] The amounts set forth in this schedule are not, and should not be deemed admissions by the Secured Creditor as to the validity or amount of any claim and Secured Creditor reserves all rights to object to any claim in this case.
[6] Through and including March 31, 2020.
[7] Through and including March 31, 2020.
[8] Through and including March 31, 2020.
[9] Through and including March 31, 2020.

**CONFIRMATION OF THE PLAN**

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing to consider approval of this Disclosure Statement and Confirmation of the Plan, **on _____, 2020 at _____ a.m., Eastern Standard Time, in the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, Courtroom 3585.** The Bankruptcy Court has directed that objections, if any, to the Approval of the Disclosure Statement or Confirmation of the Plan be filed and served on or before _____, 2020 at 4:00 p.m. EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Plan Proponent intends to seek Confirmation of the Plan at the Confirmation Hearing. **The Plan Proponent believes that the Plan satisfies all applicable requirements of § 1129(a) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan. Since no classes of claims are impaired under the Plan, all classes of claims are deemed to have accepted the Plan.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Plan Proponent, the Debtor, or the Debtor's assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**NO VOTING – SUMMARY**

**THE PLAN PROVIDES FOR PAYMENT TO EACH CLASS OF CREDITORS HOLDING ALLOWED CLAIMS IN FULL. THERE ARE NO CREDITORS HOLDING CLAIMS THARE ARE IMPAIRED, OR THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, OTHER THAN THE PLAN PROPONENT WHICH HAS WAIVED THIS RIGHT.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE PLAN PROPONENT. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE PLAN PROPONENT, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE**

ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Plan Proponent to the Debtor's known creditors pursuant to § 1125(b) of the Bankruptcy Code. The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[10]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of the Secured Creditor's Secured Claim ($5,987,415.33) in full as secured by the Property.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Plan Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Plan Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Plan Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are

---

[10] A password is necessary for access to view documents on the Internet.

authorized by the Plan Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

Solicitations of votes to accept or reject the Plan will not be made by the Plan Proponent in accordance with this Disclosure Statement and § 1125 of the Bankruptcy Code as pursuant to § 1126(f) of the Bankruptcy Code, all classes of claims are conclusively presumed to have accepted the Plan. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## PLAN PROPONENT'S RECOMMENDATION

In the Plan Proponent's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." Since the Plan provides for full payment plus interest of all Allowed Claimholders, § 1129(a)(7) of the Bankruptcy Code has been satisfied as creditors are not entitled to be paid more than one hundred (100%) percent plus interest on account of their claims.

## BACKGROUND

### THE DEBTOR

The Debtor's business consists of the ownership and operation of the Property, and the Debtor is a New York Domestic Limited Liability Company. As explained more fully below, the Property generates substantially all of the Debtor's income and on which Property, no substantial business is being conducted by the Debtor, other than the business of operating the Property and activities incidental thereto. The Plan Proponent makes no representations as to whether any residential units at the Property are subject to rent regulation such as the New York City Rent Stabilization Code. Upon information and belief, the Debtor's sole source of income is from rents generated by the Property. Upon information and belief, the Debtor's members managed the Property. The Debtor's Statement of Financial Affairs [docket item 20]

discloses, among other things, that the Debtor's managing member is Chu H. Kwon ("Kwon"), who owns eighty-six percent (86%) of the Debtor.

## THE SECURED CREDITOR &THE LOAN

On or about October 11, 2018, Debtor, together with 5505 Associates LLC ("5505 LLC"), and 5507 Associates LLC ("5507 LLC")[11], as borrowers, entered into that certain Note Consolidation and Modification Agreement with Emerald Creek Capital 3, LLC ("Emerald"), as lender, in the original principal sum of $4,900,000.00 (the "Note").

To secure repayment of the indebtedness evidenced by the Note, on or about October 11, 2018, Debtor, 5505 LLC and 5507 LLC, as mortgagors, executed and delivered to Emerald, that certain Mortgage Consolidation and Modification Agreement (the "Mortgage", and together with the Note and all other documents evidencing the Loan, the "Loan Documents"), which encumbered the Property in the original principal sum of $4,900,000.00. The duly executed Mortgage was recorded with the Office of the City Register of the City of New York (the "City Register") on October 24, 2018 under CRFN 2018000355037. The Mortgage also encumbers the real property located at 5505 5th Avenue ("5505 5th Ave.") which will be sold pursuant to the Chapter 11 Plan in In re: 5505 Associates LLC and the real property located at 5507 5th Avenue ("5507 5th Ave,"), which will be sold pursuant to the Chapter 11 Plan in In re: 5507 Associates LLC.

On or about May 29, 2019, the Note, Mortgage and all other documents associated with the Loan were assigned from Emerald to the Secured Creditor pursuant to an Assignment of Mortgage (the "Assignment").

The Debtor defaulted under the terms of the Note and Mortgage by, failing to tender the monthly payment as required under the terms of the Note and Mortgage on or about April 1, 2019 and all subsequent payments thereafter (the "Default").

## THE PROPERTY

Upon information and belief, the Property consists of a four-story, walk-up building containing six residential apartment units and two commercial retail units.

As a direct result of the Debtor's failure and/or inability to exercise control over the Property, HPD has assessed an extensive amount of Housing Maintenance Code violations against the Property. Thus, it would appear that conditions at the Property are less than optimal.

In point of fact, a website maintained by HPD reveals the existence of not less than fifty-

---

[11] 5505 LC and 5505 LLC are debtors under separate Chapter 11 Bankruptcy proceedings which have been consolidated with the instant proceeding for joint administration.

six (56) open violations ("HPD Violations") against the Property, the majority have been assessed within the last four years.

Of the 56 open violations, 37 are designated as class "B", "Hazardous" and 3 are designated as class "C", the most severe category of violations, deemed immediately hazardous and required by the Housing Maintenance Code to be corrected within 24 hours.

As a result of the Debtor's Default and failure to cure same, the Secured Creditor sought to exercise its right to foreclose on the pledge of membership interests given by the Debtor's principal, Chu K. Kwon, via that certain *Pledge and Security Agreement* and dated as of October 11, 2018, which was duly executed and delivered to Emerald (at the time the Loan was originated, along with all other Loan Documents), by conducting a commercially reasonable public sale of those membership interests on July 15, 2019 (the "Interests Sale").

## THE DEBTOR'S BANKRUPTCY FILING

To thwart the Interests Sale, on July 11, 2019 (the "Petition Date"), the Debtor filed its instant petition (the "Petition") for Chapter 11 bankruptcy relief before this Court under Case No. 1-19-44263-ess.

On September 4, 2019 the Debtor, through its principal, appeared with counsel for the Meeting of Creditors pursuant to Bankruptcy Code §341(a) ("341 Meeting"). At the 341 Meeting, Debtor provided copies of appraisals for the Properties (defined below). Pursuant to the appraisal provided, the Property had a fair market value of $2,200,000.00.[12]

## SIGNIFICANT EVENTS IN THIS CHAPTER 11 CASE

## THE PETITION AND SCHEDULES

On the Petition Date, the Debtor filed a skeletal petition. All outstanding schedules were filed by the Debtor by July 31, 2019. The Debtor's Statement of Financial Affairs indicates that Kwon is the Debtor's managing member.

In addition, in its Petition and Schedules, the Debtor identifies the Secured Creditor as holding a first mortgage on the Property. The Debtor also identifies SN Funding LLC as holding an unliquidated, disputed claim secured by a purported mortgage on the Property, however, this mortgage is not recorded and SN Funding LLC has not filed a proof of claim prior to the Bar Date. As such, any purported claim of SN Funding LLC is not being treated as an Allowed Claim pursuant to this Plan, and is believed to be the claim of an insider, not entitled to payment.

---

[12] 5505 5th Avenue and 5507 5th Avenue (as defined below) had fair market values of $2,300,000.00 and $2,400,000.00, respectively, pursuant to the appraisals provided by Debtor.

In addition, the Debtor identifies the Internal Revenue Service ("IRS"), New York City Department of Finance ("NYCDOF") and NYS Department of Tax & Finance as holding an unsecured priority claims in unknown amounts.

In addition to the Secured Creditor, the New York City Water Board, IRS, New York City Office of Administrative Trials and Hearings and NYCDOF have all filed proofs of claim.

As of the date hereof, the Secured Creditor has reported that it has not received a single payment from the Debtor since the Petition Date. In addition, and based in part on the Debtor's complete failure to file any monthly operating reports, it is unclear whether the Debtor has made any post-petition payments for Property insurance. Although the Debtor did make a property tax payment on November 18, 2019 for real estate taxes which came due on July 1, 2019, that amount was insufficient to cover all Property taxes that came due on July 1, 2019, as reflected by the outstanding property tax balance specified throughout this Disclosure Statement.


**OPERATING REPORTS**

Notwithstanding the requirements of the Office of the United States Trustee for the Eastern District of New York, the Debtor has failed to file a single Monthly Operating Report with this Court since the Petition Date.

**BAR DATE**

In accordance with the requirements of § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. On September 5, 2019, the Bankruptcy Court entered an Order (the "Bar Date Order") [docket item 26] fixing October 18, 2019 as the last date for filing (non-governmental) Proofs of Claim (the "Bar Date"), with January 8, 2020 for all governmental claims. The Plan Proponent will reserve sufficient Cash as necessary to satisfy all allowed Claims, timely filed by governmental units filed in the Court's Claims Register by or before January 8, 2020.

If neither the Plan Proponent nor the Debtor file an objection to a properly filed proof of claim on or before thirty (30) days from the Effective Date (or as extended by the court) then such Claim will be deemed Allowed and will be entitled to the full Distribution under the Plan on account of its Allowed Claim. At this time, the Plan Proponent does not intend on objecting to any timely filed proof of claim.

**THE EXPIRATION OF THE EXCLUSIVE PERIOD**

The Debtor's exclusive right to file a plan of reorganization in this Case expired on November 8, 2019.

**JOINT ADMINISTRATION**

On October 25, 2019, the Court entered an Order [docket item 29], pursuant to §342(c)(1) of the Bankruptcy Code and Bankruptcy Rule 1015, directing the procedural consolidation and joint administration of this proceeding with the following three other Chapter 11 proceedings before this Court: In re: Chu H. Kwon, Case No.: 19-44290 (ESS); In re: 5505 Associates LLC, Case No.: 19-44264 (ESS); and In re: 5507 Associates LLC, Case No.: 19-44265 (ESS). The cases are being jointly administered under Case No, 19-44290 (ESS).

The Plan Proponent intends on filing a disclosure statement and Chapter 11 Plan in In re: 5505 Associates LLC, and In re: 5507 Associates LLC cases, substantially similar to the Disclosure Statement and Chapter 11 Plan filed herein.

## SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

## THE PROPOSED SALE

The Plan provides that the Property shall be sold in a private sale to the Plan Proponent or its designated nominee in satisfaction of the Plan Proponent's Secured Claim[13], plus an additional Cash Contribution by the Plan Proponent of $74,144.12, subject to the approval of the Bankruptcy Court which shall be included in the Confirmation Order.

The Cash Contribution is comprised of the Secured Creditor's contribution of $74,144.12 (the "Cash Contribution"), which the Secured Creditor intends use to satisfy certain allowed claims of creditors of the Debtor's estate as they pertain to the Loan and obligations of the Debtor which fall upon the Secured Creditor in relation to the Property, including allowed administrative claims and tax claims which may have been accruing since the commencement of this case.

The Plan Proponent intends to purchase the Property as a credit against its Secured Claim as that Secured Claim exists as of the date of the Sale.

---

[13] The Secured Claim shall be satisfied through the sale of the Property in this proceeding, and the sale of 5505 5th Ave. and 5507 5th Ave. (collectively, the Property, 5505 5th Ave. and 5507 5th Ave. ae the "Properties"), through the respective plans in In re: 5505 Associates LLC, Case No.: 19-44264 (ESS); and In re: 5507 Associates LLC, Case No.: 19-44265 (ESS) (together with this proceeding, the "Bankruptcies").

Proceeds generated from the Sale along with a Cash Contribution will be utilized by the Plan Proponent to fund Distributions under the Plan as necessary to satisfy one-hundred (100%) percent of all Allowed Claims of creditors of the Debtor in full with appropriate interest.

Through the Sale, the Plan Proponent, or its nominee, shall take title to the respective Property free and clear of all liens, claims and encumbrances[14] pursuant to §§ 363(f) and 1123(a)(5) of the Bankruptcy Code (subject only to the existing Mortgage and residential tenancies evidenced by a valid written lease). In addition, the Plan Proponent shall utilize the Cash Contribution to pay Allowed Claims.

Upon closing of the Sale, promptly after entry of the Confirmation Order, the Plan Proponent or its nominee, shall take title to the respective Property free and clear of all liens, claims and encumbrances. The Plan Proponent's authority to purchase the Property in partial of the amount of its Secured Claim is subject to approval of this Court, which shall be deemed granted upon entry of the Confirmation Order.

The closing of the Sale will take place promptly after entry of the Confirmation Order. In addition, upon completion of the Sale, Jaspan Schlesinger LLP, the Plan Proponent's Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property to the Plan Proponent in accordance with the terms of the Plan, including without limitation a Bargain and Sale Deed with Covenants, a Bill of Sale and all required transfer tax returns and ACRIS documents. Upon the Sale, the Debtor (to the extent the Debtor is in possession of same) shall turn over all leases and security deposits to the Plan Proponent or its designee for the Property. Furthermore, on the Effective Date, the Debtor will provide the Plan Proponent, or its nominee, an assignment and assumption of all residential and/or commercial leases at the Property and the right to collect any and all rent arrears from such tenants.

**Classification of Claims and Interests**

Classification of claims is governed, in part, by §§ 1122 and 1123(a) of the Bankruptcy Code. 11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). 11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four (4) classes of Claims and one (1) class of Interests:

---

[14] Including, but not limited to, claims of residential and commercial tenants of the Properties.

Class 1  -      Priority Tax Claims
Class 2  -      Secured Creditor's Secured Claim
Class 3  -      NY Claims
Class 4  -      General Unsecured Claims
Class 5 -       Equity Interests

Since no classes of claims are impaired under the Plan, holders of all classes of claims and claimholders are conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted under the Plan.  As set forth in Article 2 of the Plan, pursuant to § 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 – Priority Tax Claims.**  Class 1 consists of all Allowed Claims, other than Administrative Claims or Bankruptcy Fees, of New York State for unpaid and outstanding income and/or corporate taxes allegedly owed by the Debtor.  Certain Claims for taxes and the payment of expenses incurred by the Debtor subsequent to the Petition Date may be entitled to priority treatment under § 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims." As of the date hereof, there are no known Priority Tax Claims.

**Class 2 – Secured Creditor's Secured Claim.**  Class 2 consists of the Secured Creditor's Allowed Secured Claim against the Property, which as of the Petition Date existed in the amount of $5,987,415.33 and is estimated to have accrued to be an amount in excess of $6,904,196.96 as of the anticipated Effective Date.

**Class 3 – NY Claims.**  Class 3 consists of the secured claims of: New York City and/or New York State against the Property.  Class 3 consists of (a) the Claims of the City of New York Department of Finance for any and all outstanding property taxes and water and sewer charges assessed against the Property, and (b) any Claims of New York Department of Buildings and/or New York Department of Housing Preservation & Development as payable to City of New York Department of Finance for environmental control board violations, as may be applicable to the Property, and any Allowed Claims which may be filed by New York State.  As of the date hereof, a secured claim has been filed by the New York City Water Board in the amount of $7,654.33, a secured claim has been filed by the New York City Office of Administrative Trials and Hearings in the amount of $14,039.79, and there are approximately $7,100.00 in real property taxes due to the New York City Department of Finance which are secured by the Property.

**Class 4 – General Unsecured Claims.**  Class 4 consists of General Unsecured Claims. This includes a claim filed by the Internal Revenue Service in the amount of $3,000.00, and a claim for Con Edison identified in the Debtor's petition in the amount of approximately $100.00.

**Class 5 – Equity Interests.** Class 5 consists of all Equity Interests in the Debtor.

**TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN**

Articles 4 and 5 of the Plan provide for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – Priority Tax Claims.**  As of the date hereof, there are no known, Priority Tax Claims.

**Class 2 – Secured Creditor's Secured Claim.**  In full satisfaction, release and discharge of the Secured Creditor's Secured Claim[15], the Secured Creditor shall obtain fee title to the Property free and clear of all liens, claims and encumbrances by virtue of its purchase of the Property through a combination of credit bidding its allowed secured claim and paying into the Cash Contribution.  The Secured Creditor's Secured Claim is estimated to be in excess of $6,904,196.96 as of the Effective Date, and may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums that the Secured Creditor is entitled to pursuant to the Note and Mortgage incurred after the Petition Date.  The Secured Creditor shall only be obligated to pay the Cash Contribution at the closing of the Sale of the Property.  At the closing, the Property shall be conveyed to the Secured Creditor, or its nominee, subject to the Secured Creditor's existing Mortgage of record if the Secured Creditor so elects.  The Class 2 claimholder is impaired to the extent that it is not receiving the full amount of its claim and waives any right to a deficiency against the Debtor.  The Class 2 claimholder supports the Plan, as is a Plan Proponent.

**Class 3 – NY Claims**.  Consists of (a) the Secured Claim of the New York City Water Board for outstanding water charges in connection with the Property in the amount of $7,654.33, (b) the Secured Claim of the NYC Office of Administrative Trials and Hearings in the amount of $14,039.79; and (c) the real property taxes due to the New York City Department of Finance in the approximate amount of $7,100.00[16].  Holders of Class 3 claims shall be paid in full with interest, and are deemed unimpaired and not entitled to vote.

**Class 4 –  General Unsecured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Unsecured Claims (including deficiency claims), on the Effective Date, each holder of an Allowed Unsecured Claim shall receive a distribution in an amount equivalent to one-hundred percent (100%) percent of their Allowed Unsecured Claims from the Disbursing

---

[15] With respect to Debtor's case.  The Secured Claim will not be fully satisfied until the sale of all three Properties is conducted.
[16] Though December 2019. The Plan Proponent will satisfy all real property taxes due with respect to the Properties pursuant to 11 U.S.C. §507.

Agent plus post-petition interest on account of their Allowed Claims at a rate of 4.00 % per annum from the Petition Date. The Internal Revenue Service has filed a proof of claim in the amount of $3,000.00, and the Debtor has identified Con Edison as an unsecured creditor in the amount of $100.00. Holders of Class 4 Allowed Claims are unimpaired and are not entitled to vote for or against the Plan.

**Class 5 – Equity Interests**. Equity interests shall be terminated on the Effective Date and shall not receive a distribution under the Plan on account of their interests. Equity interests shall remain responsible for winding down the affairs of the Debtor subsequent to the Effective Date. The Debtor's schedules do not indicate, nor is the Secured Creditor aware, of the Debtor retaining anything other than the Property that would need to be administered by the reorganized Debtor. While Equity interest may be impaired, they are not entitled to vote.

**TREATMENT OF NON-CLASSIFIED CLAIMS**

Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under § 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under § 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under § 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim. It is estimated that the Administrative Claims total not more than $7,500.00 which consists of the Debtor's counsel's professional fees in an amount of not more than $7,500.00.

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim

incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor.  The Administrative Bar Date is the first Business Day that is fifteen (15) days after Confirmation.

**Bankruptcy Fees.**  All fees and charges assessed against the Debtor of its Estate under § 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges.  It is estimated that Bankruptcy Fees and charges will be approximately $34,650.00, or such greater sum as necessary to satisfy the Office of the United States Trustee.

**Professional Fees.**  11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code.  In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases.  "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's retained professionals pursuant to § 330 of the Bankruptcy Code, as determined by the Bankruptcy Court but in an amount not to exceed $7,500.00, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court.

## DISPUTED CLAIMS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor by any Entity.

**Time to Object.**  Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim must be filed no later than forty-five (45) days after the Effective Date.  Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (x) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any

corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of Distributions on account of Claims and Interests.  In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within fifteen (15) days following the later of (i) the Effective Date, or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest, or (iii) such other times provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.**  Jaspan Schlesinger LLP shall be the Disbursing Agent and shall make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond.  The Disbursing Agent shall not incur any liability, other than for willful misconduct or criminal conduct, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Cash Contribution and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.  If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent and such creditor shall forfeit its right to receive any Distribution(s) under this Plan if such Distribution is not claimed by the Entity entitled thereto before the later of (i) 90 days after the Effective Date or (ii) 90 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.  Any such forfeited sums shall then be retained by the Plan Proponent.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim.  However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims.  Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.  To the extent practicable, the Disbursing Agent shall hold such cash in a segregated account in accordance with § 345 of the Bankruptcy Code, and may invest any cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan.  In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

**COMPLIANCE WITH TAX REQUIREMENTS**

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

**EFFECTIVE DATE**

The Effective Date of the Plan is defined as the Closing Date of the sale of the Property.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Effective on and as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected in accordance with § 365 of the Bankruptcy Code, EXCEPT those pertaining to leases between the Debtor and residential tenants at the Property.   The Plan Proponent does not believe that there are any executory contracts and unexpired leases which would be subject to rejection since all leases are believed to be between the Debtor and residential tenants at the Property.  For the avoidance of doubt, only residential leases between the Debtor and tenants at the Property shall remain in full force and effect subject to their terms.   In addition, on the Effective Date, the Disbursing Agent may provide the Plan Proponent, or its nominee, with an assignment and assumption of all residential leases at the Property and the right to collect any and all rent arrears from existing tenants.

**Rejection Claims**.  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims.  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 15 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the date the Plan is Confirmed.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against either the Debtor, the Plan Proponent (or its nominee), their successors or their respective Property.

**TRANSFER OF THE PROPERTY**

Except as otherwise provided in the Plan, on the Effective Date all of the assets and Property of the Debtor's Estate shall vest in the Plan Proponent, or its nominee, free and clear of all Liens, Claims and encumbrances and the Debtor shall cooperate with the execution of any and all documents needed to facilitate the transfer of the Property. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Furthermore, on the Effective Date or as soon as practicable thereafter, all rent arrears, leases, insurance claims and proceeds thereof to which the Debtor was entitled, shall be assigned by the Disbursing Agent to the Plan Proponent and/or its nominee.

FUNDING

The Plan will be funded by moneys made available as a result of the Sale of the Property, including the Cash Contribution on the Effective Date, or as soon as practicable thereafter. A detailed breakdown of how the Plan Proponent intends to fund the plan is as follows. The Secured Creditor will escrow with the Disbursing Agent, the sum of $74,144.12.

The Plan Proponent has been advised that Debtor's counsel's legal fees total approximately $7,500,[17] and the estimated fees due to the Office of the United States Trustee upon a sale of the Property will total approximately $34,650.00.

In order to pay all estimated Administrative Claims and quarterly fees due to the Office of the United States Trustee (estimated to be $34,650.00), NY Claims estimated as of the Effective Date ($29,960.33), General Unsecured Claims estimated as of the Effective Date ($3,292.93), and Administrative Claims in the amount of $7,500.00 in full, the Plan Proponent is prepared to utilize the Cash Contribution from the Plan Proponent, to fund the Plan. The total Cash required to pay holders of all Allowed Claims and Administrative Claims (even if the claim objections are resolved in favor of the claimants) is estimated to be no more than $74,145.00. Any remaining funds after the payment to holders of Allowed Claims in Classes 1 through 5, shall be retained by the Plan Proponent.

The Debtor shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan. The Confirmation Order shall contain appropriate provisions consistent with § 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

---

[17] Which amount represents one-third of the aggregate legal fees owed to Debtors' counsels between the instant case and two related cases.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under §§ 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of monthly operating reports and post-confirmation status reports which post-confirmation status reports shall be filed until the closing of the Debtor's Chapter 11 Case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date, the Disbursing agent shall file a closing report detailing all disbursements made at the closing on the Property. All outstanding quarterly fees and any applicable interest due thereon payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree, conversion or dismissal, whichever is earlier.

## TRANSFER TAXES

Pursuant to § 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the sale of the Property to the Plan Proponent) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Plan Proponent shall have the protections afforded under the "good faith" purchaser provisions of § 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

## REVOCATION OF THE PLAN

The Plan may be altered, amended, modified or withdrawn by the Plan Proponent at any time before substantial consummation of the Plan, as provided in §§ 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of §§ 1122 and 1123 of the Bankruptcy Code with respect to the classification

of Claims and Interests and the contents of a plan.  Prior to Confirmation, if a Plan Proponent files modifications to the Plan, pursuant to § 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of § 1127(a); however, the proponent of a modification to a plan must comply with § 1125 of the Bankruptcy Code with respect to the plan as modified.

If the Plan Proponent revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

Plan payments are to be made from the Sale proceeds which will come primarily from the Cash Contribution.  There can be no assurance that the sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court.  Otherwise, the Debtor is not obligated to make the payments required hereunder.

## CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on _____, 2020 at __ a.m. in the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, Courtroom 3585.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before _____, 2020 at 4:00 p.m.** Objections must be served upon (i) Counsel to the Debtor:      Charles E Simpson, Esq., Windels Marx Lane & Mittendorf, 156 West 56th Street, New York, NY 10019; (ii) Counsel to the Plan Proponent,

Jaspan Schlesinger LLP, 300 Garden City Plaza, Garden City, New York 15530 – Attn: Frank C. Dell'Amore, Esq., (iii) The United States Trustee, Attn: Rachel Wolf, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Plan Proponent has proposed the Plan in good faith, (iv) the Plan Proponent has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible. The Plan Proponent believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor' business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or

assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Plan Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals the distribution that such person would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the Debtor's reorganization, the payment of all of the Debtor's outstanding secured indebtedness, and 100% plus interest to holders of all other Allowed Claims. Since Creditors would not be entitled to receive more than 100% plus interest in a Chapter 7 liquidation, § 1129(a)(7) of the Bankruptcy Code is satisfied. Annexed hereto as Exhibit A is the Plan Proponent's Liquidation Analysis.[18]

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the sale of the Debtor's Property to the Plan Proponent. Thus the Plan meets the feasibility requirements of the Bankruptcy Code as long as the Plan Proponent deposits the Cash Contribution in Escrow prior to the Confirmation Hearing.

**EFFECT OF CONFIRMATION**

## LIMITATION OF LIABILITY

**11 U.S.C. § 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to § 1125(e), as set forth in Article 8 of the Plan, neither the Plan Proponent or its nominee, nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in**

---

[18] The Liquidation Analysis uses the total amount of Plan Proponent's Secured Claim, the value of the Properties and all claims in the Bankruptcies combined.

connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 8 of the Plan.

## ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

The Plan Proponent believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Plan Proponent reserves their right to file an amended plan and/or disclosure statement.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Plan Proponent have not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Plan Proponent, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Plan Proponent offers no statements or opinions

that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Debtor: Charles E Simpson, Esq., Windels Marx Lane & Mittendorf, 156 West 56th Street, New

York, NY 10019, (ii) Counsel to the Plan Proponent, Jaspan Schlesinger LLP, 300 Garden City Plaza, Garden City, New York 15530 – Attn: Frank C. Dell'Amore, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449   or (iv) may be retrieved from the Court's web site at https://ecf.nyeb.uscourts.gov  (provided such party has PACER access) by searching Case No.:

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

## CONCLUSION

The Plan Proponent believes that confirmation of the Plan is in the best interests of all Creditors.

Dated:   Garden City, New York
         January 14, 2020

**Jaspan Schlesinger LLP**

By: _____

Frank C. Dell'Amore, Esq.
Christopher D. Palmieri, Esq.
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

*Attorneys for 5th Avenue Mixed Use LLC*


**5TH AVENUE MIXED USE LLC**


By: _____

David Aviram, *Manager*

Appendix

| #   | Debtor Name        | Case No.  | Last 4 Digits of EIN |
|-----|--------------------|-----------|----------------------|
| 1.  | 4811 Associates LLC | 19-44263 | 9576                 |
| 2.  | 5505 Associates LLC | 19-44264 | 9596                 |
| 3.  | 5507 Associates LLC | 19-44265 | 9544                 |

## EXHIBIT A - LIQUIDATION ANALYSIS

| ASSETS | THE PLAN | CHAPTER 7 |
|---|---|---|
| Proceeds from sale of the Properties | $7,152,101.77[19] | $6,900,000.00[20] |
| TOTAL ASSETS: | $7,152,101.77 | $6,900,000.00 |
| Unclassified | | |
| Administrative Claims | | |
| US Trustee | $83,950.00 | $0.00 |
| Professional Fees | $22,500.00 | $22,500.00 |
| Priority Tax Claims | $38,618.72 | $38,618.72 |
| Broker | $0.00 | $345,000.00 |
| Plan Proponent Secured Claim | $6,904,196.96[21] | $6,904,196.96 |
| NY Claims | $92,236.09 | $92,236.09 |
| General Unsecured Claims | $10,600.00 | $10,600.00 |
| Chapter 7 Trustee Professional Expenses | $0.00 | $230,249.85 |
| TOTAL LIABILITIES: | $7,152,101.77 | $7,643,401.62 |
| Amount Available for Unsecured Claims | $10,600.00 | $0.00 |
| Percentage Recovery for Unsecured Creditors | 100% | 0% |

---

[19] This is the estimated amount of Plan Proponent's Allowed Secured claim as of the Effective Date and the Cash Contribution amount that Plan Proponent will contribute with which to pay creditors holding Allowed Claims against the Debtor's estate.

[20] This figure adopts the valuation of the Properties as set forth in the Debtor's Petitions for the sole purpose of this liquidation analysis, as Plan Proponent would not serve as the purchaser and would not agree to pay Cash as necessary to fund distributions to all Creditors holding Allowed Claims. Instead, under a scenario involving a Chapter 7 Trustee, Plan Proponent would require payment on account of its Allowed Secured Claim in full. This is not an admission or a representation of value for any other purpose.

[21] This is the estimated amount of Plan Proponent's Allowed Secured Claim as of the Effective Date